# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALLSTATE INSURANCE COMPANY** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:17cv182-HSO-JCG** |
| | § | |
| | § | |
| **MICHELLE SIMPSON and** | § | |
| **JEREMY CHERRY** | § | **DEFENDANTS** |

*Consolidated with*

| | | |
|---|---|---|
| **JEREMY CHERRY** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:17cv219-HSO-JCG** |
| | § | |
| | § | |
| **ALLSTATE INSURANCE COMPANY** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER DENYING JEREMY CHERRY'S [21] MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART ALLSTATE INSURANCE COMPANY'S [23] MOTION FOR SUMMARY JUDGMENT; AND DISMISSING JEREMY CHERRY'S BAD FAITH CLAIM WITH PREJUDICE

BEFORE THE COURT in these consolidated cases are the Motion [21] for Summary Judgment filed by Jeremy Cherry and the Motion [23] for Summary Judgment filed by Allstate Insurance Company. After consideration of the Motions, related pleadings, the record, and relevant legal authority, the Court finds that Cherry's Motion [21] should be denied and that Allstate's Motion [23] should be granted in part and denied in part. Plaintiff's bad faith claim will be dismissed

1

with prejudice.

# I. BACKGROUND

## A. Factual background

For purposes of resolving both Motions [21], [23] for Summary Judgment, the parties do not dispute the basic facts of this case. Michelle Simpson ("Simpson") carried an automobile insurance policy (the "Policy") with Allstate Insurance Company ("Allstate"), effective February 20, 2017. *See* Policy [1-3] at 6-45. The Policy included uninsured motorist insurance coverage for bodily injury and property damage. *Id.* at 7. The only vehicle listed in the Policy declarations was Simpson's 2006 Ford Taurus. *Id.* at 6.

The Policy afforded coverage for an "insured person" for "bodily injury" and "property damage" when caused by accident, and when such injury or damage arose out of the ownership, maintenance, or use of an uninsured automobile. Policy [1-3] at 21, 35. The Policy defined "insured person" as, among others, the named insured or any resident relative. *Id.* at 36. "Bodily injury" included physical harm to the body, *id.* at 25, and "property damage" was defined as "damage to or destruction of *the insured auto*, including loss of use, and the personal property owned by an insured person which is contained in the insured auto at the time of the accident," *id.* at 36 (emphasis added). In turn, "insured auto" was defined as "any auto or utility auto you own which is described in the Policy Declarations," and

includes for purposes of uninsured motorist coverage a "replacement auto,"[1] an "additional auto,"[2] a "substitute auto,"[3] and a "non-owned auto."[4] *Id.* at 25.

Jeremy Cherry ("Cherry") is Simpson's adult grandson. Cherry owned a GMC truck that was registered in his own name during the time period covered by the Policy. *See* Cherry's Mot. [21] at 2. Cherry lived with Simpson, but neither he nor his truck was identified as an additional driver or insured vehicle on the Allstate Policy. *Id.* Cherry did not carry separate insurance on his truck.

On April 5, 2017, Cherry was driving his GMC truck when he was involved in an automobile collision with another motorist, Tony A. Stallworth ("Stallworth"), whom Cherry claims was uninsured at the time. Cherry made a claim upon Simpson's Allstate Policy demanding payment under the uninsured motorist provision for bodily injury to himself and property damage to his truck. According to a preliminary estimate [21-1] supplied by Cherry, his truck sustained $14,495.61 in damage.

For purposes of Allstate's present Motion [23], "Allstate assumes that, as

---

[1] A "replacement auto" is a newly acquired automobile owned by the named insured, which is a permanent replacement for the automobile described on the declarations. Policy [1-3] at 25.

[2] An "additional auto" is an automobile of which the named insured becomes the owner during the policy period, under certain circumstances. Policy [1-3] at 25.

[3] The Policy defines a "substitute auto" as a "non-owned auto" temporarily being used by the named insured or a resident relative with the permission of the owner while the named insured's insured auto is being serviced or repaired, or if the named insured's insured auto is stolen or destroyed. Policy [1-3] at 25.

[4] A "non-owned auto" is an automobile used by the named insured or a resident relative with the owner's permission, but which is not owned by the named insured or a resident relative or available or furnished for the regular use of the named insured or a resident relative. Policy [1-3] at 25.

Cherry alleges, Stallworth was uninsured." Allstate's Mem. [24] at 2 n.1. Allstate does not contest that Cherry is afforded bodily injury coverage under the Policy as a resident relative of Simpson's, and the parties have resolved that claim. *See* Stipulation [16] at 1. What remains of the coverage dispute is the issue of whether the property damage to Cherry's truck is covered.

The parties agree that the unambiguous language of the Policy excludes from coverage the property damage to Cherry's truck. *See, e.g.,* Allstate's Compl. [1] at 4; Cherry's Resp. [25] at 2.[5] Cherry argues, however, that the Mississippi Uninsured Motorist Act, Mississippi Code §§ 83-11-101, *et seq.* (the "UM Act"), mandates coverage for such damage as a matter of law, regardless of the language contained in the Policy.

B.  Procedural history

On June 23, 2017, Allstate filed a Complaint [1] for Declaratory Judgment against Simpson and Cherry in this Court (the "Lead Case"), Compl. [1] at 1-6, seeking a declaratory judgment that uninsured motorist property damage benefits

---

[5] Allstate cites to the Policy's [1-3] uninsured motorist coverage provision as being on pages 35 through 38 of the Policy [1-3], using the Court's Electronic Case Files ("ECF") pagination. *See* Allstate's Mem. [24] at 2. Cherry cites to the Policy *in toto* in his brief and does not provide a page citation. *See, e.g.,* Cherry's Mem. [22] at 2 n.2. The parties do not specifically address the endorsement on page 21. *See* Policy [1-3] at 21. While the uninsured motorist coverage provisions in the main body of the Policy and in the endorsement are very similar, there are some differences. *See id.* at 21, 35. For example, the phrase "property damage" does not appear in bolded text in the endorsement as it does in the body of the Policy, *see id.* at 21, and the Policy provides that "[d]efined words are printed in bold face type," *id.* at 25. Therefore, one could argue that the Policy definition of "property damage" does not apply to the uninsured motorist coverage. *See, e.g., Gunn v. Principal Cas. Ins. Co.,* 605 So. 2d 741, 743-44 (Miss. 1992). However, in light of the Court's finding that neither party has met its initial summary judgment burden, the Court need not consider the effect, if any, of the endorsement at this time.

are not recoverable under the Policy for Cherry's property damage claim, and that any bad faith, punitive damages, and/or extra-contractual damages are not legally viable in this coverage dispute. *Id.* at 6.

On June 28, 2017, Cherry initiated a separate lawsuit in the Circuit Court of Jackson County, Mississippi, against both Stallworth and Allstate. *See Cherry v. Stallworth*, No. 1:17cv219 (the "Member Case"). The Complaint in the Member Case advanced a negligence claim against Stallworth and uninsured motorist and bad faith claims against Allstate. *See* Member Case Compl. [1-1] 4-13. Allstate removed that case to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332, *see* Member Case Notice of Removal [1] at 1, and then filed a Motion to Sever Cherry's claims against the non-diverse party Stallworth and remand the severed claims to state court, *see* Member Case Mot. [7] at 1. The Court granted Allstate's Motion to Sever and retained jurisdiction over Cherry's claims against Allstate in the Member Case. *See* Member Case Order [9] at 10.

Upon Allstate's Motion, the Court next consolidated the Lead Case and the Member Case, which both remain pending. *See* Order [13] at 3. Cherry and Allstate have now filed cross Motions [21], [23] for Summary Judgment, asking the Court to resolve the question of whether there is uninsured motorist property damage coverage for Cherry's truck under the Policy and under Mississippi law. In addition, or in the alternative, Allstate seeks summary judgment on Cherry's bad faith claim.

## II. DISCUSSION

A.     Subject-matter jurisdiction

Allstate filed the Lead Case in this Court on the basis of diversity jurisdiction.    *See* Allstate's Compl. [1] at 2 (citing 28 U.S.C. § 1332).[6]    28 U.S.C. § 1332(a)(1) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1).    The record supports the conclusion that Allstate is a citizen of Delaware and Illinois for diversity purposes, and that Simpson and Cherry are citizens of Mississippi.    The parties are therefore completely diverse.

Allstate's Complaint [1] asserts that the amount-in-controversy exceeds $75,000.00.    Allstate's Compl. [1] at 2.    While Simpson and Cherry did not file a motion to dismiss for lack of subject-matter jurisdiction, in support of its Motion [23] for Summary Judgment Allstate has supplied an e-mail from Cherry's counsel in which counsel questions whether the amount in controversy is satisfied.    *See* E-Mail [23-3] at 2 ("the amount in controversy, even by the language in your pleading, is far less than $75,000").

The Court has a continuing duty to examine its subject-matter jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Warren v. United States*, 874 F.2d 280, 281-82 (5th Cir. 1989).    Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over

---

[6]  The Court has previously addressed the question of its subject-matter jurisdiction in the Member Case.    *See* Member Case Order [9] at 1-10.

those matters specifically designated by the Constitution or Congress.
*Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010).
Courts "must presume that a suit lies outside this limited jurisdiction, and the
burden of establishing federal jurisdiction rests on the party seeking the federal
forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party
invoking the Court's jurisdiction bears the burden of establishing diversity
jurisdiction. *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed
Certificates Series 2006-24*, 866 F.3d 351, 355 (5th Cir. 2017).

When a plaintiff insurer seeks a declaratory judgment regarding the scope of
coverage afforded by an insurance policy, the amount in controversy is assessed
according to the value of the right to be protected, which is the plaintiff insurer's
potential liability under the policy, plus potential attorneys' fees, penalties,
statutory damages, and punitive damages. *Hartford Ins. Grp. v. Lou-Con Inc.*, 293
F.3d 908, 911-12 (5th Cir. 2002) (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*,
134 F.3d 1250, 1253 (5th Cir. 1998)). The potential liability under the policy is not
necessarily equal to the policy limit, but is based upon what the insured actually
seeks to recover. *Id.*

Allstate's Complaint [1] in the Lead Case relies upon the $50,000.00 policy
limit and Cherry's bad faith and punitive damages claims to establish that the
amount in controversy is satisfied. It is clear that, although Cherry's truck may
have only sustained $14,495.61 in damage, *see* Estimate [21-1] at 1-3,[7] Cherry's

---

[7] It appears that there may be other damages at issue in addition to the physical damage to
the truck, such as storage fees. *See* Letter [22-2] at 1; Letter [22-3] at 2.

pleadings seek full policy limits from Allstate. In the Member Case, Cherry raises a "continuing demand for payment of his bodily injury and property damage claims up to the sum of the Uninsured Motorist Coverage limits set for [sic] on the Simpson declaration page." Cherry's Compl. [1-1] at 8. In addition, Cherry seeks an award of punitive damages. Considering Cherry's Complaint [1-1] in the Member Case as the object of the Lead Case, Allstate's potential liability under the Policy, coupled with potential attorneys' fees and punitive damages, exceeds the $75,000.00 threshold.

Even if Allstate's potential liability for actual property damages is limited to $14,495.61, the Court finds that the amount in controversy nevertheless exceeds $75,000.00. An award of punitive damages in a "single digit ratio" to the $14,495.61 in compensatory damages could easily exceed $75,000.00. *See generally, e.g., Gentiva Certified Healthcare Corp. v. Rayborn*, No. 5:14-CV-97-DCB-MTP, 2016 WL 164322, at *3 (S.D. Miss. Jan. 13, 2016) (holding that the requisite $75,000.00 jurisdictional amount compared to a potential $13,000.00 compensatory award is less than a 6 to 1 ratio, well within the "single digit ratio" which the Supreme Court suggests complies with due process) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).

Based upon the foregoing, Allstate has carried its burden of demonstrating that the amount in controversy in this particular case exceeds the sum or value of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). The Court finds that it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

B. <u>Summary judgment standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quotation omitted).

C. <u>Interpretation of insurance policies under Mississippi law</u>

The parties do not dispute that Mississippi law governs the claims in this case. Mississippi courts treat the language and provisions of insurance policies as contracts, subject to the same rules of interpretation as other contracts. *Pulliam v. Alfa Ins. Co.*, 238 So. 3d 620, 627 (Miss. Ct. App. 2018) (citing *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1180 (Miss. 2014)). When a policy's language is clear and unambiguous, it must be enforced as written. *Id.* "Any ambiguity in the policy is construed against the insurer, and exclusions in uninsured motorist policies are strictly construed." *Boatner v. Atlanta Speciality Ins. Co.*, 115 F.3d 1248, 1251 (5th Cir. 1997). However, if the provisions of an uninsured motorist insurance policy conflict with Mississippi's Uninsured Motorist Act, the statutory provisions prevail and are incorporated into the policy. *Dunnam v. State Farm Mut. Auto. Ins. Co.*, 366 So. 2d 668, 670 (Miss. 1979).

D. <u>Mississippi's Uninsured Motorist Act</u>

Unless the insured rejects it in writing, an automobile liability insurance

policy in Mississippi must contain

> an endorsement or provisions undertaking to pay *the insured* all sums
> which he shall be legally entitled to recover as damages for *bodily injury*
> or death from the owner or operator of an uninsured motor vehicle . . . .

Miss. Code § 83-11-101(1) (emphasis added).[8]   Such a policy must also contain

> an endorsement or provisions undertaking to pay *the insured* all sums
> which he shall be legally entitled to recover as damages for *property*
> *damage* from the owner or operator of an uninsured motor vehicle . . . .

Miss. Code Ann. § 83-11-101(2) (emphasis added).   "Obviously the purpose of

uninsured motorist insurance is to benefit the insured by making available

compensation for his property damage, bodily injuries or death."   *State Farm Mut.*

*Auto. Ins. Co. v. Daughdrill*, 474 So. 2d 1048, 1051 (Miss. 1985).

> Mississippi Code § 83-11-103(b) defines an "insured" as
>
> [I] *the named insured and, while resident of the same household, the*
> *spouse of any such named insured and relatives of either, while in a*
> *motor vehicle or otherwise*, and [II] any person who uses, with the
> consent, expressed or implied, of the named insured, the motor vehicle
> to which the policy applies, and [III] a guest in such motor vehicle to
> which the policy applies, or the personal representative of any of the
> above.   The definition of the term "insured" given in this section shall
> apply only to the uninsured motorist portion of the policy.

Miss. Code Ann. § 83-11-103(b) (emphasis and numbering added).   "Thus, under

the applicable statutory law, when an automobile owner accepts the offer of

uninsured motorist coverage, both he and his guests are insured for bodily [injury]

and property damage arising from the negligent operation of an uninsured vehicle."

---

[8] The UM Act was amended effective July 1, 2018, while the present Motions for Summary
Judgment were pending.   *See* 2018 Miss. Laws S.B. 2311 (amending Mississippi Code § 83-
11-101 and other statutes).   The specific portions of the statutes at issue in the present
case were not amended, and none of the amendments affect the questions before the Court.
*See id.*

*Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 125 (Miss. 1992).

The parties do not dispute that, as a relative who resided with the named insured Simpson, Cherry qualified as an "insured" under the Policy at the time of the accident. Under Mississippi uninsured motorist law, an injured party is often classified as either a Class I or Class II insured, generally for "stacking" purposes. *See Meyers v. Am. States Ins. Co.*, 914 So. 2d 669, 674 (Miss. 2005). Persons included in Class I consist of the "named insured, and residents of the same household, his spouse and relatives of either, while in a motor vehicle or otherwise," while persons included in Class II consist of "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." *Id.*; *see also* Miss. Code Ann. § 83-11-103(b).

As a resident relative, Cherry is considered a Class I insured, and the Mississippi Supreme Court has held that under the UM Act, a "Class I insured is covered in any automobile, as a pedestrian, or even in the bathtub—if an uninsured motorist came flying through the window and caused an injury." *Glennon v. State Farm Mut. Auto. Ins. Co.*, 812 So. 2d 927, 931 (Miss. 2002), *overruled on other grounds by Meyers*, 914 So. 2d at 675 (overruling *Glennon* to the extent it held Class II insureds were entitled to uninsured motorist benefits beyond those for which a named insured contracted). According to the supreme court, the UM Act explicitly affords Class I insureds "broad coverage." *Meyers*, 914 So. 2d at 675 n.6 (citing *Glennon*, 812 So. 2d at 931). Under Mississippi law, this broad protection extends to all circumstances when a Class I insured is injured by an uninsured motorist,

while Class II coverage extends only to an individual when in a covered automobile. *Id.* at 674.

The parties do not dispute that Cherry's "bodily injury" caused by the uninsured motorist was compensable under the Policy and under Mississippi law. The disagreement here is whether the UM Act supplants the Policy's definition of "property damage," which the parties agree by its plain language affords no coverage for the damage to Cherry's truck. While the UM Act requires uninsured motorist coverage for "property damage," it does not define that phrase. *See* Miss. Code Ann. § 83-11-101(2).

E.    Resolving conflicts between insurance policies and Mississippi Code § 83-11-101 in general

A policy containing uninsured motorist coverage "is written against the backdrop" of the UM Act, and the Mississippi Supreme Court deems the statute incorporated into and made a part of the insuring contract. *Gunn v. Principal Cas. Ins. Co.*, 605 So. 2d 741, 744 (Miss. 1992). While an uninsured motorist policy may afford coverage broader than that mandated by the statute, *id.*, "[b]y law, a UM insurer may not contract for coverage less than that statutorily required," *id.* at 742. The UM Act is "is liberally construed so as to provide coverage." *Lawler v. Gov't Employees Ins. Co.*, 569 So. 2d 1151, 1153 (Miss. 1990).

According to the Mississippi Supreme Court, "[t]he purpose of the uninsured motorist statute is to give the same protection to the person injured by the uninsured motorist as the injured party would have if injured by an insured person." *Spradlin v. State Farm Mut. Auto. Ins. Co.*, 650 So. 2d 1383, 1387 (Miss.

1995). The Mississippi Supreme Court has consistently construed the UM Act to provide, not limit, protection and has "held that the injured party should be treated as if injured by a responsible party." *Lawler*, 569 So. 2d at 1154. The uninsured motorist statute requires that uninsured motorist coverage limits in insurance policies be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, Mississippi Code §§ 63-15-1, *et seq*., which states that a motor vehicle liability policy shall carry limits of liability of no less than $25,000.00 "because of injury to or destruction of property of others in any one (1) accident," Miss. Code Ann. § 63-15-43.

When determining whether coverage exists under an uninsured motorist policy, a court must integrate the UM Act into the policy and "give the legal text so assimilated the most coherent meaning its words may bear." *Gunn*, 605 So. 2d at 743. In addition, when terms used in the policy "have no natural law definition in uninsured motorist law," their "[m]eaning is a function of contract augmented and informed by statute." *Id*. In such a scenario, the Mississippi Supreme Court directs courts to begin with the language of the policy and seek "common and ordinary meanings for words upon which rights turn." *Id*.

Finally, "an insurer cannot limit, restrict or reduce the coverage requirements of the UM statute by omitting language or inserting restrictive language into its insurance policies." *Spradlin*, 650 So. 2d at 1386. "[A]ny attempt to contractually limit an insurer's duty of coverage is necessarily confined to the boundaries of the statute and may not be effective to narrow the

requirements of that statute." *Id.* at 1386-87 (quotation omitted).

According to the Fifth Circuit, "[t]he Mississippi Supreme Court has applied a relatively thick coat of judicial gloss to the UM Act." *Boatner v. Atlanta Speciality Ins. Co.*, 115 F.3d 1248, 1253 (5th Cir. 1997). In making an *Erie* guess in *Boatner*, the Fifth Circuit considered four principles:

> First, the Mississippi Supreme Court has repeatedly stated that courts should liberally construe the provisions of the UM Act to effectuate the remedial and humanitarian purposes of the Act. Second, uninsured motorist provisions within automobile insurance policies must be interpreted from the standpoint of the injured insured. Third, if the provisions of the UM Act provide broader protection than the uninsured motorist policy, then the terms of the Act become part of the policy, providing the insured a statutory level of monetary protection. Fourth, although the Mississippi Supreme Court has not always closed its judicial eye to the insurance law of other jurisdictions, the court has more recently suggested that courts interpreting Mississippi uninsured motorist law should be guided by the terms of Mississippi's uninsured motorist statute, not the jurisprudence of foreign jurisdictions.

*Id.* at 1253-54 (quotations and citations omitted).

Based on these principles, the Fifth Circuit noted that "the Mississippi Supreme Court has stated that 'the overwhelming number of uninsured motorist insurance policy exclusion provisions that this Court has considered have been found to be void and against public policy.'" *Id.* at 1254 (quoting *Atlanta Cas. Co. v. Payne*, 603 So. 2d 343, 347 (Miss. 1992)). Conversely, if a policy's terms meet the minimum requirements of the UM Act, they do not run afoul of Mississippi public policy. *Id.*

F.   Analysis

    1.   Allstate's request for summary judgment on the property damage
        coverage question

    *a.   The UM Act's use of the phrase "property damage"*

A plain reading of the UM Act requires that an insurance company pay to an insured all sums the insured is legally entitled to recover as damages for "property damage" from the owner or operator of an uninsured motor vehicle.   Miss. Code Ann. § 83-11-101(2).   The parties have not cited any authority indicating that the phrase "property damage" has a natural law definition in uninsured motorist law. *See Gunn*, 605 So. 2d at 743.   In considering this phrase's meaning, the Court must therefore look to common and ordinary meanings of these terms.   *Id.*   Cherry has supplied a Merriam-Webster Dictionary definition of "property damage," as meaning "damage or destruction to houses, cars, etc."   Definition [22-5] at 1.   This definition does not include a requirement that such damage be to an insured vehicle.   *See id.*

    *b.   The Policy's definition of "property damage"*

Because the only definition of "property damage" in this case is the one contained in Simpson's Policy, Allstate posits that it should control because it is reasonable and provides the same level of coverage afforded insureds under the Mississippi Motor Vehicle Safety Responsibility Law.   *See* Allstate's Reply [28] at 6. Allstate argues that an insurer may limit or define specific aspects of uninsured motorist coverage, as long as the restriction provides the same level of coverage to those who are insureds under the Mississippi Motor Vehicle Safety Responsibility

Law.  *See id.* at 6 (citing *Boatner*, 115 F.3d at 1255).   Allstate's arguments are not persuasive under the specific facts of this case.

In this case, if the purportedly uninsured driver who caused Cherry's damages had carried the minimum liability insurance, Cherry would have been entitled to recover up to at least $25,000.00 for destruction of his property under Mississippi law.   *See* Miss. Code Ann. § 63-15-43.   In other words, if the accident here had involved an insured party, Cherry would be have been entitled to recover as much as $25,000.00 for any damage to his truck.

On the other hand, under the Allstate Policy's definition of "property damage" for uninsured motorist coverage, the parties agree that Cherry is precluded from recovering any sums for property damage.   Despite Cherry's status as an "insured" under the uninsured motorist coverage provision, he cannot recover for property damage unless the damage occurred to an "insured auto," and Cherry's truck does not constitute an "insured auto" under the Policy.   *See* Policy [1-3] at 25, 36.   The definition of "property damage" employed by Allstate therefore arguably constitutes restrictive language inserted into the Policy by the insurer, which effectively reduces the coverage available under the Mississippi UM Act and affords less coverage to insureds than required by the Mississippi Motor Vehicle Safety Responsibility Law.   Such restrictive policy language would not be effective under Mississippi law to narrow the requirements of the UM Act.   *See Spradlin*, 650 So. 2d at 1386.   Allstate has not met its burden of showing that it is entitled to judgment as a matter of law on this claim.

The plain wording of the UM Act does not contemplate a piecemeal whittling away of liability for damages caused by uninsured motorists. Mississippi case law dictates that the UM Act is to be "liberally construed so as to provide coverage." *Lawler v. Gov't Employees Ins. Co.*, 569 So. 2d 1151, 1153 (Miss. 1990). In this case, the UM Act would override the apparently conflicting, exclusionary language attendant to "property damage" uninsured motorist coverage in Allstate's Policy.

Allstate's interpretation of the Policy also attempts to differentiate between the uninsured motorist coverage afforded insureds for bodily injury and that provided for property damage. However, if an insured does not decline uninsured motorist coverage, the Mississippi UM Act draws no such distinction between recoverable bodily injury and property damage for an insured. *See* Miss. Code Ann. § 83-11-101. In fact, the language of the statute's coverage provisions is nearly identical, except for the effective dates and the phrases "bodily injury or death" and "property damage." *See id.*

In *Lowery v. State Farm Mut. Auto. Ins. Co.*, 285 So. 2d 767 (Miss. 1973), the Mississippi Supreme Court considered an exclusionary clause in an uninsured motorist provision that provided that the insurance did not apply to bodily injury an insured sustained while occupying or being struck by a motor vehicle owned by a named insured or any resident of the same household, if such vehicle was not an owned motor vehicle. *Id.* at 770. The policy further provided that the motor vehicle had to be listed in the declarations, a temporary substitute automobile, or a newly-acquired automobile. *Id.* At issue in *Lowery* was a resident relative's

uninsured motorcycle, which was "clearly within the terms of the exclusionary provision of the policy." *Id.* at 769. The supreme court held that the policy's exclusionary clause violated Mississippi public policy as manifested by the UM Act. *Id.* at 777. Again, there is no indication in the UM Act that the Mississippi legislature intended to differentiate between bodily injury and property damage coverages for uninsured motorist policies, and these statutory provisions are nearly identical. *See* Miss. Code Ann. § 83-11-101.

While the case did not specifically address the provisions of the UM Act, the Court finds instructive *Kendrick v. Mississippi Farm Bureau Ins.*, 996 So. 2d 132 (Miss. Ct. App. 2008). In that case, Lamarka Kendrick was driving his sister Demetry's 1996 Nissan Maxima when Lamarka was involved in an accident with an uninsured motorist. Lamarka and Demetry both resided with their parents. The insurer denied Demetry's claim under the policy insuring the Maxima due to non-payment and lapse of the policy, because there was no insurance coverage on the Maxima at the time of the accident. *Kendrick*, 996 So. 2d at 133-34, 136. However, once the insurer was informed that the other driver was uninsured, the insurer paid uninsured motorist coverage for property damage to the Maxima under Lamarka and Demetry's father's separate automobile policy, which did not specifically insure the Maxima. *See id.* at 134. While the issue in *Kendrick* solely involved whether there was a viable punitive damages claim, the fact that the father's uninsured motorist coverage included property damage to a non-insured vehicle owned by a resident relative is informative, as it is that type of property

18

damage Allstate seeks to exclude in its Policy.

Allstate has not carried its initial summary judgment burden of demonstrating that Cherry, as a Class I insured under both the Policy and the UM Act, cannot recover his property damage under Mississippi law.

c.      *Uninsured motorist coverage case law cited by Allstate*

Relying upon *Boatner*, Allstate argues that it is entitled to supply a reasonable definition of "property damage" in the Policy because the UM Act and Mississippi case law do not define "property damage" in the uninsured motorist context.   Allstate's Mem. [24] at 6 (citing *Boatner*, 115 F.3d at 1255).   *Boatner*, however, is distinguishable.

In that case, the Fifth Circuit considered a territorial limit in an insurance policy, which limited recovery to losses occurring within the United States, its territories and possessions, Canada, and Puerto Rico.   *Boatner*, 115 F.3d at 1250. While the UM Act did not include territorial limitations, the Fifth Circuit noted that by referring in the UM Act to "limits" of the Mississippi Motor Vehicle Safety Responsibility Law, the Mississippi legislature plainly intended to import into the UM Act the protections provided by the Mississippi Motor Vehicle Safety Responsibility Law, which provided for coverage in the United States and Canada. *Id.* at 1255.   From the perspective of the insureds, the Fifth Circuit found that the insureds could not have expected coverage for an accident in Honduras if the owner or operator of the uninsured truck had been insured because the Mississippi Motor Vehicle Safety Responsibility Law afforded protection only for accidents occurring in

the United States and Canada.[9]  The Mississippi Motor Vehicle Safety

Responsibility Law contains no analogous restriction on coverage for "property

damage," or coverage for "injury to or destruction of property of others . . . ."  Miss.

Code Ann. § 63-15-43(2)(b).  Allstate's reliance upon *Boatner* in this regard is

misplaced.

Allstate also relies upon *Aitken v. State Farm Mutual Automobile Insurance

Company*, 404 So. 2d 1040 (Miss. 1981),[10] to posit that an insurer can define certain

phrases more narrowly than the UM Act so long as the narrower definition is

reasonable.  *See* Allstate's Mem. [24] at 7 (citing *Aitken*, 404 So. 2d at 1042-43).

The insured plaintiff in *Aitken* was a passenger in her own, insured vehicle when

she was involved in a collision and was injured.   The plaintiff made a claim under

the uninsured motorist provision of her policy, which the insurer denied.   At issue

was a provision in the policy which stated that the term "uninsured motor vehicle"

did not include a vehicle defined as an insured motor vehicle.  *Aitken*, 404 So. 2d at

1042-43.  The plaintiff argued that this policy provision conflicted with the UM Act.

*Id.* at 1043.

The Mississippi Supreme Court recognized that, in accordance with the UM

Act, the driver of the plaintiff's insured vehicle was also considered an "insured"

---

[9]  The Mississippi Motor Vehicle Safety Responsibility Law, specifically Mississippi Code §
63-15-43, has been amended several times since *Boatner* was decided in 1997.  *See, e.g.,*
2016 Miss. Laws Ch. 410 (H. B. 525); 2016 Miss. Laws Ch. 328 (H. B. 1381); 2005 Miss.
Laws Ch. 483 (H.B. 722).   The references to geographical limitations in the statute were
deleted effective January 1, 2017.  *See* 2016 Miss. Laws Ch. 410 (H. B. 525).  This has no
impact on the present case.
[10]  *Aitken* was abrogated in part by *Burns v. Burns*, 518 So. 2d 1205 (Miss. 1988), based
upon the doctrine of interspousal immunity, an issue not relevant here.

under the uninsured motorist portion of the policy. *Id.* The court held that the policy's definitions of an "insured motor vehicle" and an "uninsured motor vehicle," and the policy's provision that a vehicle cannot be both "insured" and "uninsured" in the same policy, did not conflict with the purpose of the UM Act. *Id.* The purpose of both the UM Act and the plaintiff's insurance policy was to cover injuries caused by another and separate motor vehicle owned or operated by a person who did not have liability insurance coverage, or who carried such coverage with an insurance company that became insolvent or bankrupt. *Id.* The policy provisions in *Aitken* were therefore found not to limit coverage under the UM Act. *Id.* The facts and circumstances of the present case are distinguishable from *Aitken*, rendering it of limited persuasive value.

Allstate also maintains that "the Mississippi Supreme Court has, on a number of occasions, held that an insurance policy may define, clarify or modify the causal connection required to recover uninsured motorist benefits." Allstate's Mem. [24] at 7 n.6 (citing *Alfa Ins. Corp. v. Ryals ex rel. Wrongful Death Beneficiaries of Ryals*, 918 So. 2d 1260, 1262-63 (Miss. 2005), *as modified on denial of reh'g* (Dec. 1, 2005); *Spradlin v. State Farm Mut. Auto. Ins. Co.*, 650 So. 2d 1383, 1386-87 (Miss. 1995); *Gray v. Allstate Ins. Co.*, 619 So. 2d 919, 921 (Miss. 1993)). These cases are also distinguishable.

*Spradlin* involved a situation where the plaintiffs, while traveling in an insured vehicle, sustained personal injuries due to gunshots fired into the car by a passenger of another vehicle that was not covered by insurance. *Spradlin*, 650 So.

2d at 1384.   After State Farm denied the uninsured motorist coverage claim, the plaintiffs filed suit, arguing that State Farm had restricted or reduced the uninsured motorist coverage mandated by the UM Act by including a provision that the "bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle."   *Id.* at 1386.

The question in *Spradlin* was whether this language limited the uninsured motorist coverage intended by the UM Act.   The supreme court held that "[e]ven though the UM statute does not specifically set out what connection must exist between the injury and the uninsured vehicle, it is unreasonable to believe that no such connection is necessary."   *Id.* at 1387.   The court noted that this holding was consistent with the Mississippi Motor Vehicle Safety Responsibility Law, which contained substantially the same language limiting damages to those "arising out of the ownership, maintenance or use" of the motor vehicle.   *Id.* at 1387 (quoting Miss. Code § 63-15-43(2)(b)).[11]   Unlike *Spradlin*, this case involves a situation arising out of the operation of an uninsured motor vehicle.

*Gray* was a case in which the plaintiff was changing a flat tire on a vehicle owned by a third party when the jack gave way, causing the automobile to fall and knock him backwards, injuring his ankle.   *Gray*, 619 So. 2d at 920.   The plaintiff brought suit against his uninsured motorist carrier.   *Id.*   The uninsured motorist coverage provision required that "property damage" be "caused by accident and

---

[11]  Mississippi Code § 63-15-43(2)(b) was modified, effective January 1, 2017, and the "arising-out-of" language at issue in *Spradlin* has been deleted.   *See* 2016 Miss. Laws Ch. 410 (H. B. 525).

arise out of the ownership, maintenance or use of an uninsured auto." *Id.*
(emphasis removed). The Mississippi Supreme Court noted that the Mississippi
Motor Vehicle Safety Responsibility Law defined accidents as those "arising out of
the ownership, maintenance, or use of *a motor vehicle*." *Id.* at 921 (emphasis added)
(quoting Miss. Code Ann. § 63-15-3(j)).

The supreme court recognized that one could argue that "the language of the
policy is ineffective because it restricts coverage beneath the statutory coverage,"
but since it found that the accident did arise under the language of the policy
because changing a tire was an act of maintenance, the plaintiff was covered. *Id.*
Because the Mississippi Supreme Court pretermitted the question before this Court,
specifically whether the policy in *Gray* restricted coverage beneath that required by
statute, and because the policy itself afforded coverage, Allstate's reliance upon
*Gray* is not helpful.

In *Ryals*, two motorists were killed when a dead pine tree fell on their
vehicle. *Ryals*, 918 So. 2d at 1261. The beneficiaries filed suit against the
decedents' automobile insurance carrier, Alfa Insurance Corporation ("Alfa"), and
the Mississippi Department of Transportation ("MDOT"), alleging that MDOT had
left a dead pine tree in an unsafe condition after unsuccessfully attempting to knock
it down with the hydraulic lift platform, or "bucket," of a bucket truck. *Id.* At
issue was a "use" provision in the policy. *Id.* at 1263. Because the MDOT truck
was not in "use" at the time of the incident, the supreme court found no coverage
existed under the policy. *Id.* While not explicitly stated, *Ryals* apparently found

the "use" provision in the policy not more restrictive than the Mississippi Motor Vehicle Safety Responsibility Law's definition. No such "use" provision is at issue here.

> d. *"Property Damage" definitions in other insurance contexts*

Allstate argues that in other insurance contexts, Mississippi courts consistently look to the relevant policy for definition of the term "property damage," such that the Court should rely upon the definition of "property damage" contained in Allstate's Policy. *See* Allstate's Mem. [24] at 7 (collecting cases). However, none of the cases relied upon by Allstate for this proposition involved property damage claims that implicated either the UM Act or the Mississippi Motor Vehicle Safety Responsibility Law. *See id.*; *see also QBE Ins. Corp. v. Eubanks & Bailey Inv. Corp.*, No. 3:07cv7-B-A, 2008 WL 907460 (N.D. Miss. Mar. 31, 2008) (considering whether a CGL insurer owed indemnity and defense duties to insured); *Shelter Mut. Ins. Co. v. Brown*, 345 F. Supp. 2d 645 (S.D. Miss. 2004) (considering whether homeowner's liability insurer was entitled to declaratory judgment of no duty to defend insured); *Audubon Ins. Co. v. Stefancik*, 98 F. Supp. 2d 751 (S.D. Miss. 1999) (resolving whether CGL policies imposed a duty on insurers to defend insureds); *Hankins v. Maryland Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645 (Miss. 2012) (considering earth movement exclusion to "property damage" coverage in home builder's CGL policy); *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601 (Miss. 2009) (resolving whether storm surge resulting from Hurricane Katrina fell within a homeowner's policy's water-damage exclusion); *W.R. Berkley Corp. v. Rea's*

*Country Lane Const., Inc.*, 140 So. 3d 437 (Miss. Ct. App. 2013)[12] (involving question of whether a commercial general liability ("CGL") insurer had a duty to defend insured); *Rogers v. Allstate Ins. Co.*, 938 So. 2d 871 (Miss. Ct. App. 2006)[13] (addressing insurer's declaratory judgment claim that its homeowner's policy did not cover defamation-related claims brought against insured).[14]

Whether, or to what extent, insurance companies can or have limited their exposure by contracting with insureds for coverage of certain limited types of "property damage" in CGL and homeowner's insurance policies is not the issue before the Court. Allstate has cited no Mississippi statutes related to CGL or homeowner's policies that would make the issues in the foregoing cases sufficiently analogous to the coverage questions posed by the UM Act to render these cases of any persuasive value.

In sum, Allstate has not shown that it is entitled to judgment as a matter of law on the coverage issue. Allstate's Motion [23] for Summary Judgment will be denied.

---

[12] Allstate cites this case as a Mississippi Supreme Court case, *see* Allstate's Mem. [24] at 7, but the citation provided is a Mississippi Court of Appeals case. The Mississippi Supreme Court denied certiorari. *See W.R. Berkley Corp. v. Rea's Country Lane Const., Inc.*, 139 So. 3d 74 (Miss. 2014).

[13] Allstate also cites *Rogers* as a decision by the Mississippi Supreme Court, *see* Allstate's Mem. [24] at 7, but this was a Mississippi Court of Appeals case. The Mississippi Supreme Court denied certiorari. *See Rogers v. Allstate Ins. Co.*, 937 So. 2d 450 (Miss. 2006).

[14] Allstate further relies upon a Mississippi treatise that its counsel apparently co-wrote to argue that Mississippi cases rely upon insurance policies' definitions of "property damage." *See* Allstate's Mem. [24] at 7-8 (citing Jeffrey Jackson and D. Jason Childress, Miss. Ins. Law and Prac. § 16:33). This section of the general insurance treatise discusses property damage under liability policies, including CGL and homeowner's policies, not under uninsured motorist policies. *See* Miss. Ins. Law and Prac. § 16:33.

2.    Cherry's bad faith claim

In the alternative, Allstate seeks summary judgment on Cherry's bad faith breach of contract claim on grounds that Cherry is not entitled to "property damage" benefits under the Policy.    Allstate's Mot. [23] at 2-3.[15]   Allstate maintains that even if Cherry is ultimately entitled to "property damage" benefits, it did not commit "bad faith" by taking the position that he was not so entitled, as Allstate believes this was an issue of first impression in the State of Mississippi. *Id.* at 2.    Allstate further contends that it timely sought judicial guidance by filing a declaratory judgment action.    *Id.*

A plaintiff bears a heavy burden of proving that the denial of an insurance claim was in bad faith.    *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010).    "A denial of a claim based upon an erroneous interpretation of policy language does not automatically equate to bad faith, if there was an arguable or legitimate basis for the denial or if [the insurer] had relied upon advice of counsel." *Minnesota Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 971 (Miss. 2014).

"Extracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim."    *Lisanby*, 47 So. 3d at 1178 (quotation omitted).    In addition, for a jury to decide a punitive damages claim, a plaintiff bears a heavy burden of demonstrating that the insurance company acted with

_____

[15] Cherry's bad faith claim related to both his bodily injury and property damage claims. Allstate and Cherry have settled Cherry's claim for bodily injury benefits and any claim for breach of contract or bad faith breach of contract related to those benefits.    *See* Stip. [16] at 1.    The remaining bad faith claim relates to the property damage coverage.

malice or gross and reckless disregard for the rights of the insured. *United States Fid. & Guar. Co. of Mississippi v. Martin*, 998 So. 2d 956, 970 (Miss. 2008).

When presented with a motion for summary judgment on a bad faith claim, a court must consider whether there is a genuine dispute of material fact as to whether the insurer possessed a legitimate or arguable basis for its claims decisions. *See, e.g., Estate of Minor v. United Servs. Auto. Ass'n*, No. 2014-CA-00372-COA, 2017 WL 2781975, at *4 (Miss. Ct. App. June 27, 2017), *reh'g denied* (Mar. 6, 2018). In determining whether an insurer had an arguable basis for denying a claim where coverage is later established, a court should consider the facts that were available to the insurer at the time the claim was denied, *see State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998), and "a court should evaluate whether there was an arguable basis for denial of coverage based solely on the reasons for denial of coverage given to the insured by the insurance company," *Sobley v. S. Nat. Gas Co.*, 210 F.3d 561, 564 (5th Cir. 2000).

In this case, Allstate responded to Cherry's claim in a letter dated June 2, 2017, within two months of the April 5, 2017, accident, setting forth its position that Cherry's "property damage" was not covered by the Policy, though this does not appear to be the first communication between Allstate and Cherry or his counsel on the coverage question. *See* Letter [25-2] at 1. According to Allstate, the Policy allowed recovery for "property damage," but only as it related to an "insured auto." *Id.* This is the same argument Allstate advanced in support of its Motion for Summary Judgment.

The letter also mentions certain definitions supplied by Cherry's counsel stating that the UM Act "covers only the motor vehicle to which the policy applies . . . ." *Id.* (quotation omitted). Allstate reiterated in the same paragraph that "the Allstate policy does not insurer [sic] the separate vehicle Mr. Cherry owned nor does the vehicle meet the definition of an 'insured auto.'" *Id.* Allstate's representative indicated that he had confirmed this position with Allstate's counsel, who had also reviewed the Policy. *Id.*

After Cherry's counsel responded with a letter dated June 12, 2017, *see* Letter [25-3] at 1-3, the parties apparently engaged in e-mail communications, not all of which appear in the record, *see* E-Mail [26-7] at 1 (dated June 23, 2017, and referencing previous e-mails). On June 23, 2017, Allstate's counsel sent Cherry's counsel an e-mail reiterating Allstate's position that property damage was only recoverable for damages to an "insured auto," and pointing out that there appeared to be a difference of opinion as to the property damage claim such that they were at "an impasse as to this issue." *Id.* On that same date, June 23, 2017, Allstate initiated this suit for declaratory judgment, *see* Allstate's Compl. [1] at 1, within three months of the accident, *see* Report [23-2] at 1.

Despite the Court's denial of Allstate's Motion for Summary Judgment, and as Allstate points out in its briefing, the issue raised in this case was rather complicated. Construing all facts in Cherry's favor, and even assuming Cherry is ultimately entitled to coverage, Allstate had an arguable and legitimate basis to deny Cherry's claim under its view that the Policy's "property damage" definition

precluded his recovery of such damages.   In fact, the parties agreed that the plain language of the Policy excluded the damage to Cherry's truck.

At issue was the question of whether the Allstate Policy impermissibly limited the coverage for "property damage" to an insured's automobile under the terms of the UM Act.   That a coverage issue may present a matter of first impression or an unsettled issue is a factor a court may consider in determining whether an insurer acted in bad faith.   *See Minnesota Life Ins. Co.*, 164 So. 3d at 971 n.12.   In this case, the parties agreed that there was no controlling case law interpreting this particular policy provision within the context of the UM Act. There is no genuine dispute of material fact on this point, and the Court finds that Allstate possessed a legitimate or arguable basis for its denial of Cherry's property damage claim.

Moreover, viewing the evidence in the light most favorable to Cherry, he has not directed the Court to any evidence of malice, recklessness, or gross disregard of Cherry's rights.   Allstate may have incorrectly denied his property damage claim, but Cherry has not produced any evidence that Allstate's conduct rose to the level of bad faith.   The Court will grant Allstate's request for summary judgment as to Cherry's bad faith claim.

3.   Cherry's Request for Summary Judgment

Cherry seeks a summary judgment that he qualifies for uninsured motorist coverage under the UM Act.   Cherry's Mot. [21] at 1, 5.   Cherry, however, has not shown beyond dispute that he is entitled to summary judgment.   While Allstate

29

assumes only for purposes of its own Motion [23] for Summary Judgment that Stallworth was uninsured, *see* Allstate's Mem. [24] at 2 n.1, it remained Cherry's initial burden in his Motion to demonstrate beyond dispute that Stallworth was an uninsured motorist. Allstate has presented evidence that Stallworth was or may have been insured by "Safeway" at the time of the accident with Cherry. *See* Report [23-2] at 4. The Uniform Crash Report prepared by a Moss Point Police officer indicates that Stallworth presented proof of insurance for a Safeway insurance policy at the time of the accident. *See id.*

Cherry has not carried his initial summary judgment burden of demonstrating that he was involved in an accident with an "uninsured motor vehicle," as that term is defined by the UM Act. Nor has Cherry directed the Court to any evidence demonstrating how Stallworth's motor vehicle fell into any of the categories of "uninsured motor vehicle" set forth at Mississippi Code § 83-11-103(c). Cherry's Motion [21] for Summary Judgment will be denied. *See* Fed. R. Civ. P. 56(a).

### III. CONCLUSION

Cherry's Motion [21] for Summary Judgment will be denied, and Allstate's Motion [23] for Summary Judgment will be granted in part and denied in part. Cherry's bad faith claim will be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [21] for Summary Judgment filed by Jeremy Cherry is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [23] for

Summary Judgment filed by Allstate Insurance Company is **GRANTED IN PART** as to Jeremy Cherry's bad faith claim, and **DENIED IN PART** as to Allstate Insurance Company's claim for declaratory judgment and Jeremy Cherry's claim for uninsured motorist coverage.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Jeremy Cherry's bad faith claim against Allstate Insurance Company is **DISMISSED WITH PREJUDICE**.    The competing coverage issues will proceed.

**SO ORDERED AND ADJUDGED** this the 24th day of August, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE